**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MD. RAFIQUL ISLAM and** | : | |
| **RAHIMA KHATUN, Husband and Wife** | : | |
| | : | |
| ***Plaintiffs*** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **No. 2:20-cv-04227-JD** |
| **STRUCTURAL MACHINERY** | : | |
| **SOLUTIONS a/k/a and/or d/b/a and/or** | : | |
| **f/k/a KALTENBACH, INC.,** | : | |
| **MUELLER INDUSTRIES, INC.,** | : | |
| **MUELLER STREAMLINE COMPANY,** | : | |
| **MUELLER SOUTHEAST, INC. and** | : | |
| **ABC Maintenance Company(ies) 1-5,** | : | |
| **ABC Consulting Company(ies) 1-5, and** | : | |
| **ABC Manufacturing Company(ies) 1-5** | : | |
| | : | |
| ***Defendants*** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO REMAND**

## I.    PROCEDURAL HISTORY

On July 29, 2020, Plaintiffs, Md. Rafiqul Islam and Rahima Khatun, husband and wife, citizens of Pennsylvania, filed a Complaint in the Philadelphia County Court of Common Pleas, captioned *Islam v. Structural Machinery Solutions, et al*. See Exhibit A.

Two of the four presently known Defendants in the lawsuit are Pennsylvania citizens.[1]

---

[1] Plaintiffs also name fictitious defendants per Pennsylvania Rule of Civil Procedure 2005.

Defendant, Mueller Streamline Company, is a Delaware corporation with a principal place of business at 287 Wissahickon Avenue, North Wales, Pennsylvania, 19454. See Plaintiffs' Complaint attached as **Exhibit "A,"** at ¶ 12.

Defendant, Mueller Southeast, Inc., is a Pennsylvania corporation with a principal place of business at 287 Wissahickon Avenue, North Wales, Pennsylvania, 19454. See Exhibit A, at ¶ 17.

On August 12, 2020, Defendants, Mueller Streamline Company and Mueller Southeast, Inc. were served through their registered agents in Harrisburg, Pennsylvania. On August 31, 2020, Defendants, Mueller Industries, Inc., Mueller Streamline Company and Mueller Southeast, Inc. removed this matter to Federal Court on the purported basis of diversity of citizenship under 28 U.S.C. §§ 1332(a)(1).

Mueller Defendants, in their Notice of Removal, **did not** meet their "heavy burden" of proving that any Pennsylvania Defendant was "fraudulently" named as a defendant in Plaintiffs' state court Complaint to defeat diversity.  This case lacks complete diversity because the Plaintiffs and two of the Defendants are citizens of Pennsylvania.

The instant case must be remanded back to the Philadelphia County Court of Common Pleas.

## II.    FACTUAL BACKGROUND

On September 19, 2018, Plaintiff, Md. Rafiqul Islam, was working for Precision Tube Company, LLC, at an industrial facility located at 287 Wissahickon Avenue, North Wales, Pennsylvania. See Exhibit A, at ¶ 1. On that date, Mr. Islam was tasked with using a Kaltenbach Reconditioned Universal Semi-Automatic Cold Sawing Machine, Kaltenbach Model No. SKL 400 H, serial no. 109904, (hereinafter "the Kaltenbach Saw

Machine" and/or "the Refurbished Saw Machine") to remove tags from sections of copper pipes. Id. at ¶ 2. Operators of the Refurbished Saw Machine, like Mr. Islam, were supposed to be protected from projectiles by a safety guard/hood fitted on the Refurbished Saw. Id. at ¶ 4.

While Mr. Islam was operating the Refurbished Saw Machine, the section of copper pipe he was cutting came loose of the Saw Machine's clamps. Id. at ¶ 5. The copper pipe ejected past the Saw Machine's safety hood/guard and violently struck Mr. Islam in the throat, face and chest causing catastrophic injuries including, *inter alia*, multiple displaced and non-displaced fractures of the thyroid cartilage; dislocation of the hyoid bone; open tracheostomy – in place for five (5) months; placement of percutaneous endoscopic gastronomy (PEG) feeding tube; extensive lacerations - surgically repaired - to the mandible, throat and chest with extensive disfiguring scarring including keloid formation, particularly about the throat; and vocal-cord paresis. Id. at ¶¶ 6, 36.

The Refurbished Saw was originally designed and/or manufactured in the 1980s and was refurbished and sold by Defendant, Structural Machinery Solutions, Inc. Id. at ¶ 25. The refurbishment of the Saw Machine included retrofitting a safety guard/hood onto the machine for the protection of operators of the Refurbished Saw Machine. Id. at ¶ 26.

On July 29, 2020, Plaintiffs filed suit in the Philadelphia Court of Common Pleas. In addition to the manufacturer/seller of the Refurbished Saw, Plaintiffs also named as Defendants: Mueller Industries, Inc., Mueller Streamline Company and Mueller Southeast, Inc. (hereinafter "Mueller Defendants" when collectively referred to).

Plaintiffs contend that the Mueller Defendants owned, operated and/or controlled the industrial facility where Mr. Islam was injured. Id. at ¶ 54. Plaintiffs contend that

Mueller Defendants were the parent company/controlling company of Precision Tube, LLC and the employer of safety-related personnel responsible for the industrial facility. Id. at ¶ 59. Plaintiffs contend that Mueller Defendants exercised control over the operations at the facility. Id.

Plaintiffs contend that, sometime prior to the accident, the Mueller Defendants determined that a "new" automatic saw machine was needed at the facility. Id. at 21. Plaintiffs contend that the acquisition of a "new" saw at the facility was the subject of a Capital Expenditure Request and the purchase required approval by the Mueller Defendants. Id. at 22. Plaintiffs contend that, as part of the Capital Expenditure Request, Mueller Defendants eschewed the costlier purchase price of a brand-new saw machine in favor of buying the Kaltenbach Refurbished Saw instead. Id. at 23-24.

Plaintiffs bring a single negligence count against the Mueller Defendants. Plaintiffs allege that the Mueller Defendants, by virtue of their ownership, operation and/or control of the industrial facility, breached their duties to business invites, like Mr. Islam, to provide a reasonably safe environment, free from hazards and dangerous conditions. Plaintiffs also allege that Mueller Defendants, as Precision Tube, LLC's parent company/controlling company and the employer of safety-related personnel, breached their duty to provide Mr. Islam a safe place to work.

### III.  LEGAL ARGUMENT

#### A.  No Complete Diversity

Subject to limited exceptions, a plaintiff is entitled to choose between filing his or her lawsuit in either federal or state court, as federal and state courts generally enjoy concurrent jurisdiction. Markham v. Ethicon, 434 F. Supp. 3d, 261, 264 (E.D. Pa. 2020)

*citing* <u>Claflin v. Houseman</u>, 93 U.S. 130 (1876). A defendant may, at its option, remove an action originally filed in state court to federal court if the federal court would have had original jurisdiction over the litigation. 28 U.S.C. § 1441(a). There are two type of subject matter jurisdiction that may confer original jurisdiction: jurisdiction based on diversity of citizenship; and jurisdiction based on a federal question raised in the case.[2]

Diversity jurisdiction exists where "the matter in controversy exceeds … $75,000, exclusive of interest and costs and is between citizens of different states." 28 U.S.C. § 1332(a)(1). The United States Supreme Court has held that in order for a federal court to exercise its jurisdiction on the basis of diversity of citizenship, there must be "complete diversity" between the parties. <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365 (1978). Thus, "diversity of citizenship is not to be available when any plaintiff is a citizen of the same state as any defendant." <u>Id.</u> at 374.

The Plaintiffs in this case are Pennsylvania citizens. The Plaintiffs allege that Defendants, Mueller Streamline Co. and Mueller Southeast, Inc., are both citizens of Pennsylvania. Plaintiff contends that Mueller Streamline Co. is a Pennsylvania citizen by virtue of it having its principal place of business at 287 Wissahickon Avenue, North Wales, Pennsylvania. Plaintiff contends that Mueller Southeast, Inc. is a Pennsylvania citizen by virtue of it being incorporated in Pennsylvania and having its principal place of business at 287 Wissahickon Avenue, North Wales, Pennsylvania. <u>See</u> Exhibit A at ¶¶ 12, 17.

Since the Plaintiffs and two Defendants are both citizens of Pennsylvania, complete diversity is destroyed.

---

[2] Here, neither the Complaint nor Defendants' Notice of Removal suggest that federal question jurisdiction provides a basis for original jurisdiction or removal.

## B.  Defendants have not Met Burden of Proving Complete Diversity

"Removal statutes should be strictly construed against removal and all doubts should be resolved in favor of remand." Markham, *supra,* at 264 *citing* In re Briscoe, 448 F. 3d 201, 217 (3d Cir. 2005). "The party who 'urges jurisdiction on a federal court' – in the case of removal, the removing defendant – 'bears the burden of proving that jurisdiction exists.'" Id. at 264 *quoting* Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

In their Notice of Removal, Mueller Defendants concede that Mueller Southeast, Inc. is a citizen of Pennsylvania while denying that Mueller Streamline Company is a citizen of Pennsylvania.

As purported support for their Notice of Removal, Mueller Defendants attach as an exhibit an affidavit executed J. Dustin Greer. Mr. Greer affirms that he is "corporate counsel *for [Defendant] Mueller Industries, Inc."* Mr. Greer does not affirm that he has any role or position with Defendant, Mueller Streamline Company.

Defendant, Mueller Streamline Company, *__did not__* submit an affidavit from any corporate officer. Nevertheless, Mr. Greer, as corporate counsel for Defendant, Mueller Industries, Inc., certifies to the Court that Defendant, Mueller Streamline Company, is a Delaware Corporation "with a principal place of business in Tennessee." Mr. Greer's affidavit does not state where exactly in Tennessee, Defendant, Mueller Streamline Company, purportedly maintains its principal place of business.

Troublingly, Mr. Greer's affidavit contains patently false information.  Mr. Greer's affidavit states that non-party, "*Precision Tube Co., LLC, owns … the production facility … where plaintiff was allegedly injured."*

6

The Montgomery County Board of Assessment lists Defendant, Mueller Streamline Company, as the legal owner of the industrial facility located at 287 Wissahickon Avenue, North Wales, Pennsylvania. See Montgomery County Board of Assessment website printout for 287 Wissahickon Avenue listing Mueller Streamline Company as the owner attached as **Exhibit "B."**

In diversity cases, removal jurisdiction was designed to prevent discrimination against out of state litigants. McSparen v. Weist, 402 F. 2d 867, 876 (3d Cir. 1968). Plaintiffs' counsel's research shows that Defendant, Mueller Streamline Company, is quite comfortable in the state court system of Pennsylvania having itself initiated multiple lawsuits as the plaintiff in the Montgomery County Court of Common Pleas. In fact, Mueller Streamline Company **even gives its address as the subject industrial facility-287 Wissahickon Avenue, North Wales, Pennsylvania, 1945 - in the captions of those Montgomery County Court of Common Pleas lawsuits.** See cover page of Complaint in *Mueller Streamline Company, Inc. v. Transtar Metals, Inc., et al.,* Montgomery County Court of Common Pleas, civil action no. 05-03111, attached hereto as **Exhibit "C;"** see also cover page of Complaint in *Mueller Streamline Company, Inc. v. Transtar Holdings, Inc., et al.*, Montgomery County Court of Common Pleas, civil action no. 05-14841, attached hereto as **Exhibit "D."**

The Mueller Defendants have not met their burden of showing that complete diversity exists. The affidavit of Defendant, Mueller Industries, Inc.'s, corporate counsel J. Dustin Greer does not definitively prove Defendant, Mueller Streamline Company's, foreign citizenship and contains patently false information regarding Defendant, Mueller Streamline Company's, legal ownership of the industrial facility where Mr. Islam was

injured. Defendant, Mueller Streamline Company, is also "at home" in the Pennsylvania state court system having initiated multiple suits there itself as a plaintiff.

The law requires that all doubts should construed against removal and be resolved in favor of remand. In re Briscoe, 448 F. 3d 201, 217 (3d Cir. 2005). Due to the doubtful nature of Mr. Greer's affidavit, this case must be remanded.

### C. Mueller Defendants have not Met Their Heavy Burden of Proving Plaintiff "Fraudulently" Named Mueller Southeast, Inc. as a Defendant to Defeat Diversity Jurisdiction

"In the absence of a federal question, removal to federal court usually requires complete diversity of citizenship of the parties and also that none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Salley v. Amerco, 213 U.S. Dist. LEXIS 98129, *3 (E.D. Pa. July 15, 2013) *citing* 28 U.S.C. § 1441(b). "The doctrine of fraudulent joinder represents an exception to these requirements." Salley, *supra,* at *3 *citing* In Re Briscoe, 448 F.3d 201, 215-16 (3d Cir. 2006).

"Under the doctrine of fraudulent joinder, a defendant may still remove the action if it can establish that any in-state resident or non-diverse defendant were 'fraudulently' named or joined solely to defeat federal court jurisdiction." Id. *citing* In Re Briscoe, *supra* at 215-16. "If a court determines that the joinder was 'fraudulent' in this sense, then the court can "disregard for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Id. *citing* In Re Briscoe at 215-16.

"By contrast, if the Court determines that it does not have subject-matter jurisdiction because the joinder was not fraudulent, it must remand to state court and may,

where appropriate, 'require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" Id. citing 28 U.S.C. § 1447(c) and quoting In Re Briscoe at 216.

"The removing party bears the burden of demonstrating fraudulent joinder: 'The removing party carries a heavy burden of persuasion . . . for removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" Id. at *6 quoting Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992). The Third Circuit has defined the standard for fraudulent joinder as follows:

> **Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant**, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. **But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.**

Id. quoting In Re Briscoe at 217 (emphasis added).

"The joinder of a party should be deemed fraudulent only if the claims are 'wholly insubstantial and frivolous.'" Salley, supra, at *7 quoting In Re Briscoe at 218. "The Third Circuit has emphasized that proper joinder for jurisdictional purposes is a lower bar than would be required for a claim to survive a motion to dismiss or a motion for summary judgment." Id. citing Batoff at 852 and Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

"In other words, a finding of fraudulent joinder is usually reserved for situations where recovery from the nondiverse defendant is a clear legal impossibility." Id. at 7. "Fraudulent joinder should not  be found simply because plaintiff has a weak case against a non-diverse defendant." Id. at *7-8 citing Boyer, supra, at 111.

The defendants alleging fraudulent joinder "bear a heavy burden of persuasion." Id. at * 11 *citing* Batoff, at 851 "In determining whether a defendant has met this burden, a district court must analyze the complaint, assuming as true all factual allegations made therein." Pennsy Supply, Inc. v. Mumma, 2010 U.S. Dist. LEXIS 38167 (M.D. Pa. 2010) *citing* Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1011 (3d Cir. 1987). The Honorable Jan E. DuBois has noted: "Under this standard, 'it is possible that a party is not fraudulently joined, but that the claim against the party ultimately is dismissed for failure to state a claim upon which relief may be granted.'" Salley, *supra,* at *12 *quoting* Batoff at 852.

"The Third Circuit has permitted district courts to conduct only a 'limited consideration of **reliable evidence** that the defendant may proffer to support the removal.'" Id. at *12 *quoting* In Re Batoff at 852 (emphasis added). "Such evidence may be found in the record from prior proceedings, which firmly establish the accrual date for the plaintiff's claim, or in other relevant matters that are properly subject to judicial notice." Id. *quoting* In Re Batoff at 852. "This 'limited look,' is cabined such that it 'does not risk crossing the line between a proper threshold jurisdictional inquiry and improper decision on the merits." Id. *quoting* In Re Batoff at 852.

"In evaluating a defendant's claim of fraudulent joinder, the Court must (1) 'focus on the plaintiff's complaint at the time the petition for removal was filed; (2) the Court must assume as true all factual allegations of the complaint; and (3) the Court must resolve all uncertainties as to the current state of the controlling substantive law in favor of the plaintiff.'" Mustafa v. Hobart Corp., 2002 U.S. Dist. LEXIS 11291, *5-6 (E.D. Pa. May 9, 2002) *citing* In Re Batoff, at 851.

Finally, a District Court "must resolve all contested issues of substantive fact in favor of the plaintiff." Salley at *14 quoting Boyer at 111 and citing Brown v. Jevic, 575 F. 3d 322, 326 (3d Cir. 2009)("Removal statutes are to be strictly construed, with all doubts resolved in favor of remand.")

Here are the factual allegations against Defendant, Mueller Southeast, Inc., contained in Plaintiff's Complaint, which the Third Circuit requires this Honorable Court to accept as true, for purposes of this Motion to Remand:

1) Defendant, Mueller Southeast, Inc., is a Pennsylvania corporation;

2) Defendant, Mueller Southeast, Inc., owned, operated, or controlled the industrial facility where Plaintiff was injured;

3) Sometime prior to Mr. Islam's accident, Defendant, Mueller Southeast, Inc., determined that a "new" automatic saw machine was needed at the facility.

4) As part of the Capital Expenditure Request related the acquisition of a "new saw machine," Defendant, Mueller Southeast, Inc., considered purchasing a brand new saw machine before ultimately buying or approving the purchase of the subject refurbished 1980's era saw machine instead;

5) The saw machine that Defendant, Mueller Southeast, Inc., purchased had a retrofitted safety cover that permitted projectiles to exit the cutting area;

6) Defendant, Mueller Southeast, Inc., undertook the supervision of the work being performed at the industrial facility, and in conjunction therewith established plans, recommendations, designs and specifications for the performance of the work;

7) Defendant, Mueller Southeast, Inc., failed to enact or implement, and/or removed, neglected, or ignored, saw machine-related safety procedures, inspection procedures, audit procedures, operating procedures, training programs, safety devices, error-detection devices and/or other monitoring devices that would have prevented Mr. Islam's accident;

8) Defendant, Mueller Southeast, Inc., permitted  hazardous conditions to exist and/or failed to warn and/or eliminate those hazardous conditions and/or failed to reasonably discover those hazardous conditions.

9) Defendant, Mueller Southeast, Inc., was the parent company, controlling company, employer of safety-related personnel, and/or otherwise exercised sufficient control over operations at the industrial facility.

<u>See</u> Exhibit A at ¶¶ 14, 20, 21-26, 54-59. Plaintiffs contend that Defendant, Mueller Southeast, Inc.'s, actions and omissions combined with the conduct of the other Defendants to cause Mr. Islam's catastrophic injuries. <u>Id.</u> at ¶¶ 53-61.

Mueller Defendants, in their Notice to Remove, contend that the Plaintiffs' allegations as to Defendant, Mueller Southeast, Inc., are incorrect. Mueller Defendants did not supply the Court with any exhibits that are properly subject to judicial notice. <u>See</u> <u>Salley,</u> *supra*, at *12. As purported support for their contention about the falsity of the allegations against Defendant, Mueller Southeast, Inc., the Mueller Defendants again rely entirely on the affidavit of J. Dustin Greer. Mr. Greer affirms that he is "corporate counsel *for [Defendant] Mueller Industries, Inc."* Mr. Greer does not affirm that he has any role or position with Defendant, Mueller Southeast, Inc.

Defendant, Mueller Southeast, Inc. ***did not*** submit an affidavit from any Mueller Southeast, Inc. corporate officer or employee. Nevertheless, Mr. Greer, as corporate counsel for Defendant, Mueller Industries, Inc., certifies to the Court that Defendant, Mueller Southeast, Inc. "is a Pennsylvania corporation which does not have a principal place of business and the only property which is owned by Mueller Southeast, Inc. is a Mueller fishing boat which is located in Florida." According to Defendant, Mueller Industries, Inc.'s, corporate counsel, Mr. Greer, the Defendant, Mueller Southeast, Inc. "has nothing to do with [P]laintiff's incident."

The Third Circuit permits only a 'limited consideration of *reliable evidence"* proffered by the Defendant. <u>Salley</u>, at *12 *quoting* <u>In Re Batoff</u> at 852. As earlier

discussed, information contained in Mr. Greer's Affidavit is dubious.  Mr. Greer is not an officer or employee of Mueller Southeast, Inc. Moreover, Mr. Greer repeatedly states that non-party Precision Tube, LLC, is the legal owner of the industrial facility where Mr. Islam was injured even though Montgomery County lists Mueller Streamline Company as the legal owner of the premises. See Exhibit D.

Plaintiff' counsel's research into  Mueller Defendants and their various subsidiaries and related companies provided the Plaintiffs with the necessary "reasonable basis in fact" and/or "colorable ground supporting the claim against" Defendant, Mueller Southeast, Inc.

Contrary to Mr. Greer's certification that Defendant, Mueller Southeast, Inc. has no physical location, the LexisNexis.com "SmartLinx" *Comprehensive Business Report*  for Mueller Southeast, Inc., a Pennsylvania corporation, lists Defendant, Mueller Southeast, Inc.'s, address as **287 Wissahickon Ave, North Wales, Pennsylvania, 19454-4115 i.e. the industrial facility where Mr. Islam was injured.** See cover page of LexisNexis.com *SmartLinx Comprehensive Business Report* for Defendant, Mueller Southeast, Inc. attached as **Exhibit "E."** *The SmartLinx Comprehensive Business Report* further lists Defendant, Mueller Southeast, Inc. has as having a sole "Operating Location:" **287 Wissahickon Ave, North Wales, Pennsylvania, 19454-4115 i.e. the industrial facility where Mr. Islam was injured.** See Exhibit E.

Plaintiffs' counsel has further uncovered publicly available documents to refute Mr. Greer's affidavit's claim that Defendant, Mueller Southeast, Inc. only has two employees, "a captain and a first mate." On October 1, 2012 - a relevant time between the acquisition of the Refurbished Saw and Mr. Islam's accident - Mueller Southeast, Inc. filed an Article

of Amendment with the Pennsylvania Department of State purportedly executed by the "Vice President" of Mueller Southeast, Inc. See Mueller Southeast, Inc. Articles of Amendment filed October 1, 2012 attached hereto as **Exhibit "F."**

In sum, Mueller Defendants have not met their "heavy burden" of proving that Plaintiffs "fraudulently" named Defendant, Mueller Southeast, Inc. to defeat diversity. To the contrary, Plaintiff had good grounds to name Pennsylvania Defendant, Mueller Southeast, Inc., in this case.

Perhaps sometime later in this litigation, Mueller Defendants will convince the factfinder that Mueller Southeast, Inc. had "nothing to do" with this incident or industrial facility located at 287 Wissahickon Avenue. Perhaps sometime later in this litigation, Mueller Defendants will convince the factfinder that Mueller Southeast, Inc. was oddly incorporated in Pennsylvania and registered in Pennsylvania for the purpose of owning a boat in Florida, as Mr. Greer contends in his Affidavit.   However, for purposes of this Motion to Remand, the question is not whether Plaintiffs' claims against Defendant, Mueller Southeast, Inc. will ultimately prove meritorious at trial. See Boyer at 113; see also Batoff at 852. For the purposes of deciding Plaintiffs' Motion to Remand, this Honorable Court, must merely determine whether Plaintiffs, at the time they filed their Complaint, had "a reasonable basis in fact or colorable ground supporting the claim against" Defendant, Mueller Southeast, Inc. Boyer, at 111.

Here, the Plaintiffs undeniably had  "reasonable basis in fact and colorable ground supporting the claims against" Defendant, Mueller Southeast, Inc. That is, Defendant, Mueller Southeast, Inc., is a Pennsylvania corporation whom reputable research source

LexisNexis shows as having its sole Operating Location as the very industrial facility where Mr. Islam was catastrophically injured. <u>See</u> Exhibit G.

<u>Pennsy Supply, Inc. v. Mumma,</u> 2010 U.S. Dist. LEXIS 38167 (M.D. Pa. 2010), is analogous.   In <u>Pennsy Supply</u>, the plaintiff filed its trademark action against the defendants in Pennsylvania state court. <u>Id.</u> at *1-2.  The defendants removed the case to federal court claiming that the Pennsylvania defendant, CACO, was fraudulently named as a defendant by the plaintiff to defeat diversity. <u>Id.</u> at *6-7. To support their argument that CACO was fraudulently named, the defendants provided the court with "several affidavits and other documents" which they contended proved "that there is no possible scenario in which [Pennsylvania Defendant] CACO was involved in the trademark dilution or unfair competition, and that all of the claims brought by [p]laintiff are actually against Mumma, not CACO." <u>Id.</u> at * 9-10. The Court noted that: "[Pennsylvania Defendant] CACO seeks to prove that it had gone out of business" prior to the plaintiff's claims arising. <u>Id.</u> *11.

The Court stated that the defendants were "essentially asking the Court to weigh in on the merits of [p]laintiff's … claims against CACO, which is specifically prohibited by the caselaw on fraudulent joinder." <u>Id.</u> at *10.   The Court remanded the case, stating:

> It may very well be that CACO will be able to prove that it had gone out of business before Mumma began using [the trade name in question]. However, that fact alone does not mean that CACO was fraudulently joined by [p]laintiff in this action. ***Defendants seek an inquiry into the actual merits of the claims alleged in the Complaint that is not proper in the current procedural disposition of the case.*** As noted above, fraudulent joinder analysis requires a court to analyze the [p]laintiff's complaint and assume all the factual allegations are true … Whether [p]laintiffs will eventually succeed on the merits of these cases is not before the Court. Instead, this Court is tasked with determining whether [p]laintiff has alleged sufficient facts to create a reasonable basis in fact or colorable claim to support the claims against [d]efendants. This Court holds that [p]laintiff has done so, and that Defendant CACO was not fraudulently joined.

Id. at * 11-12, *citing* Steel Valley, *supra*, at 1011. (emphasis added)

The Honorable Petrese B. Tucker's opinion in Mustafa v. Hobart Corp. 2002 U.S. Dist. LEXIS 11291 (E.D. Pa. May 7, 2002) provides another excellent example of how the determination of "fraudulent joinder" depends on whether the plaintiff had a reasonable basis for naming the non-diverse defendant, rather than on the ultimate merits of the claim against the Pennsylvania defendant.

In Mustafa, the plaintiff suffered a traumatic amputation of his arm while using a meat grinder in the course and scope of his employment. 2002 U.S. Dist. LEXIS, at *1. The plaintiff, a Pennsylvania citizen, filed suit in the Philadelphia Court of Common Pleas against multiple defendants including Hobart, the manufacturer of the meat grinder, and Superior, the alleged seller of the meat grinder. The defendant, Hobart, was a citizen of Ohio. The defendant, Superior, was a citizen on Pennsylvania. The defendant, Hobart, removed the case contending that the plaintiff had fraudulently joined Superior to defeat diversity. Id. at *2.

In support of their allegation of fraudulent joinder, the defendants argued that, despite the existence of a Superior sticker on the meat grinder, there was definitive evidence that defendant, Superior, was not involved in any way in the chain of distribution of the subject meat grinder from the time of its manufacture by Hobart to its acquisition by the plaintiff's employer. Id. at *6-8 and n. 5. The Honorable Petrese B. Tucker remanded the case to the Philadelphia Court of Common Pleas, stating:

The court concludes that plaintiff has alleged a colorable claim against defendant Superior. Plaintiff alleges that defendant Superior sold a defective meat grinder, and the defective meat grinder was the proximate cause of plaintiff's injuries. The Court cannot predict whether plaintiff's allegation in his complaint would be sufficient to sustain his claim against defendant Superior under Rule 12(b)(6). However, the question that is before the Court at this juncture is whether plaintiff has a colorable claim in state court, and the Court holds that plaintiff does have a colorable claim. The Court cannot, in examining Defendant, Hobart's fraudulent joinder allegation, make a determination on the merits of the case in order to determine that the joinder of the defendant Superior at this stage is improper.

Id. at 10, *citing* Batoff, 977 F.2d at 852.

In the instant case, the Mueller Defendants, like the Defendants in Pennsy Supply, Inc. and Mustafa, improperly ask the Court to accept Mueller Industries, Inc.'s corporate counsel's version of the facts instead of the factual allegations contained in the Complaint. This is not permissible. This Court "must resolve all contested issues of substantive fact in favor of the plaintiff." Salley at *14 *quoting* Boyer at 111 and *citing* Brown v. Jevic at 326. Like the Defendants in  Pennsy Supply, Inc. and Mustafa,  the Mueller Defendants in this case improperly seek to have the Court rule on the merits of Plaintiffs' claims against Mueller Streamline, Inc.

Mueller Defendants have not met their heavy burden of showing that Plaintiffs lacked a "reasonable basis in fact" or  "colorable ground supporting the claims against" Defendant, Mueller Southeast, Inc.

### IV.    CONCLUSION

Mueller Defendants have failed to satisfy their heavy burden of proving that removal to this Court was proper based on the doctrine of fraudulent joinder. Instead, for all of the reasons discussed above, this Honorable Court must remand this matter to where jurisdiction is proper, the Philadelphia County Court of Common Pleas.

**WHEREFORE,** Plaintiffs, Md. Rafiqul Islam and Rahima Khatun, respectfully request this Honorable Court to grant Plaintiffs' Motion to Remand to the Philadelphia County Court of Common Pleas.

**Respectfully Submitted,**

**By:**    *Kevin M. Durkan*
          Brian E. Fritz, Esquire; ID No. 84044
          Kevin M. Durkan, Esquire; ID No. 201770

**FRITZ & BIANCULLI, LLC**
1515 Market Street, Suite 1801
Philadelphia, PA 19102
(215) 458-2222

*Attorneys for Plaintiffs, Md. Rafiqul Islam and
Rahima Khatun, husband and wife*

Dated: September 18, 2020